1  ROBERT M. YASPAN, SBN 051867
   DEBRA R. BRAND, SBN 162285
2  LAW OFFICES OF ROBERT M. YASPAN
3  21700 Oxnard Street, Suite 1750
   Woodland Hills, California 91367
4  Telephone: (818) 774-9929
   Facsimile: (818) 774-9989
5  [Proposed] General Counsel for Debtors

6
                    UNITED STATES BANKRUPTCY COURT
7                    CENTRAL DISTRICT OF CALIFORNIA
                      SAN FERNANDO VALLEY DIVISION
8

9  In re                                ) Chapter  No.:   11
                                        )
10                                       )
   Muscle Improvement Holding Corporation, ) Case No.: 10-10868
11 a California Corporation              )
                                        )
12                                       )
              Debtor                     )
13 _____     )
   In re                                ) Chapter  No.:   11
14                                       )
15 Muscle Improvement Inc.,             ) Case No.: 10-12736
   a California Corporation             )
16                                       )
              Debtor.                    ) Date:   January 28, 2010
17                                       ) Time:   10:00 A.M.
18                                       ) Place:   Courtroom 303
                                        )          21041 Burbank Blvd.
19 _____     )          Woodland Hills, CA 91367
                                        )
20                                       )
                                        ) Chapter No.:   11
21                                       )
22 Muscle Improvement – Hawthorne Inc.  ) Case No.: 10-12743
   a California Corporation             )
23                                       )
              Debtor                     ) This document relates to:
24                                       )
                                        ) XX  All cases
25                                       ) ____ Muscle Improvement Holding Corporation
                                        ) ____ Muscle Improvement, Inc.
26                                       ) ____ Muscle Improvement – Hawthorne, Inc.
   _____     ) ____ Muscle Improvement – Commerce, Inc.
27                                       ) ____ Muscle Training Corporation
28                                       ) ____ Abram and Ruth Tavera

                                   1

| | | |
|---|---|---|
| 1 | In re | ) Chapter No.: 11 |
| 2 | Muscle Improvement – Commerce Inc. | ) Case No.: 10-12756 |
| 3 | a California Corporation | ) |
| 4 | | ) |
| 5 | Debtor | ) |
| 6 | | ) |
| 7 | | ) |
| 8 | In re | ) Chapter No.: 11 |
| 9 | Muscle Training Corporation, | ) Case No.: 10-10873 |
| 10 | a California Corporation, | ) |
| 11 | Debtor. | ) |
| 12 | | ) |
| 13 | In re | ) Chapter No.: 11 |
| 14 | Abram and Ruth Tavera | ) Case No.: 10-12765 |
| 15 | | ) |
| 16 | Debtors. | ) |
| 17 | | ) |

## EMERGENCY MOTION FOR: (1) AN ORDER AUTHORIZING JOINT ADMINISTRATION; AND (2) FOR TRANSFER OF VENUE SUCH THAT ALL CASES ARE HEARD IN THE SAME COURT ; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE AND ALL INTERESTED PARTIES:

Muscle Improvement Holding Corporation, a California corporation ("MIHC"), Muscle Improvement, Inc., a California corporation ("MIR"), Muscle Improvement – Hawthorne, Inc., a California Corporation, ("MIH") and Muscle Improvement – Commerce, Inc., a California corporation ("MIC"), Muscle Training Corporation ("MTC"), Abram Tavera and Ruth Tavera

(collectively the "Debtors"), hereby move this Court for entry of an order on an emergency basis, in substantially the form of the proposed order attached hereto as Exhibit "A", directing the joint administration of their Chapter 11 cases and estates pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

PLEASE TAKE FURTHER NOTICE that the Debtors will also bring forth a hearing that all of the cases be heard before the same Judge and the same Court, and that the Court order the transfer of venue of either the two San Fernando Valley Division cases to the Los Angeles Division, or the four Los Angeles Division cases to the San Fernando Valley Division.

For the reasons set forth below, the relief requested herein is critical because its approval will avoid the administrative burden on this Court and the Debtors, and alleviate any potential for confusion, which may arise from the separate administration of these cases.

In support of this Application, the Debtor submits the accompanying Memorandum of Points and Authorities, as well as the Declaration of Abram Tavera ("Tavera Decl.").

Pursuant to Local Bankruptcy Rule 2081-1(a)(6), the Court may enter an order granting an early hearing date, either as an emergency motion or one to be heard on shortened time.  The relief sought in this Motion is necessary on an emergency basis because its approval will avoid the administrative burden on this Court and the Debtors, and alleviate any potential for confusion, which may arise from the separate administration of these cases.  Nevertheless, concurrently with the filing of this Motion, Debtors have served copies of the Motion by facsimile or U.S. mail on the parties listed on the Proof of Service attached hereto.

Dated:  January 26, 2010                        LAW OFFICES OF ROBERT M. YASPAN


By_____
    Robert M. Yaspan, Proposed Attorneys
    for Debtors

# I.
## BACKGROUND

1.　　On January 26, 2010 ("Petition Date"), the Debtors commenced their reorganization cases by filing voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  Tavera Declaration, Paragraph 2 (hereinafter referred to as the "Tavera Decl.")

2.　　The Debtors are continuing in possession of their assets and are operating and managing their business as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  Tavera Decl., Paragraph 3.

3.　　TAVERA is the sole owner of debtor corporation MIHC, which owns the debtor corporations MIR, MIC and MIH, which themselves own and operate gymnasiums open to the public doing business as Gold's Gyms in, respectively, Redondo Beach, Commerce, and Hawthorne, California.  In addition MIR, MIC and MIH jointly own Muscle Training Corporation.  Jointly, the five companies are known as the GYM DEBTORS".   The first gym opened was the Redondo Beach facility; the second was the Hawthorne facility; and the third gym opened was the Commerce facility. It is the Commerce facility (first opened in the throes of this recession) that is by far the weakest financially.  In fact, it could be said that the cash flow drain caused by the Commerce facility was one of the major causes of the necessity of the filing of this Chapter 11 proceeding.   Tavera Decl., Paragraph 4.

4.　　Abram Tavera is a former Los Angeles Police Department patrol officer who, throughout his life after retirement from the LAPD, has owned and operated businesses of various types.  TAVERA was one of the first franchisees of Taco Bell and has in the past owned and operated three such restaurants in the Los Angeles area.  After those restaurants were sold back to the franchisor, TAVERA purchased three senior living mobile home parks that are currently owned and

4

operated.  Two of those mobile home parks are owned by TAVERA through separate corporations:
(a) Sierra View Mobile Home Park Corporation ("SIERRA VIEW") in Phelan, California, and (b)
Vista Del Rio Mobile Home Park Corporation in Belen, New Mexico ("RIO").  A third mobile home
park in Yucaipa, California, is owned through a partnership of which TAVERA is a 75% owner
(Carriage Trade Manor ("CTM").  Tavera Decl., Paragraph 5.

.          5.          In addition, TAVERA owns and operates the "King Harbor Marine Center" (KHMC")
in Redondo Beach through a separate corporation (King Harbor Marine Center, Inc.) that TAVERA
solely owns.  Tavera Decl., Paragraph 6.

           6.          Thus, at the present time TAVERA indirectly owns and operates not only the GYM
DEBTORS, but also three senior living mobile home parks (SIERRA VIEW, RIO, and CTM) and a
marine center (KHMC).  (Together, SIERRA VIEW, RIO and CTM will be referred to as the
"MOBILE HOME PARKS").  Tavera Decl., Paragraph 7.

           7.          The GYM DEBTORS employ about 120 people (in total) and service about 15,000
members.  In addition the MOBILE HOME PARKS (one of which, CTM, is directly a part of
TAVERA's estate through the 75% ownership interest in a general partnership) are currently home to
approximately 450 residents, each of whom lease space in one of the MOBILE HOME PARKS.
Tavera Decl., Paragraph 8.

           7.1          There is a fourth GYM DEBTOR in Auburn, Washington that operates under a
separate corporation known as "GG Limited Express, LLC".  This operation consists of a Golds Gym
that is owned indirectly by the Tavera Estate through an 81% ownership interest.  In addition, Mr.
Tavera holds the franchise rights to the physical location.  The club is operated by either Allstate
Finance Group, Inc., or its affiliates for the benefit of Mr. Tavera and a minority owner.  AFG is an
entity that claims to hold a $580,000 claim against Mr. Tavera, MTC, MIH, MIC, and MIH.  In

addition GG Limited Express, LLC has physical possession of certain gym equipment as to which

MIH is directly liable, and as to which it is not currently making payments. One of the first efforts of

these joint estates will be to determine whether or not to directly take over the operation of this

Auburn, Washington facility. Tavera Decl., Paragraph 8.1.

7.2    The CTM park referred to just above in Paragraphs 4 and 6 is in Yucaipa, California

and appears as a scheduled item on the "B" schedules of the Tavera Bankruptcy. Mr. Tavera directly

runs the Yucaipa operation; the 25% partner is a "silent" one. The mobile home park known as

"Carriage Trade Manor" leases ground on a long term basis to seniors that park their mobile homes at

CTM. Of the businesses operating in this Chapter 11 proceeding CTM is the most profitable, and the

one most likely to survive the Chapter 11 proceeding.    It is involved in this Chapter 11 proceeding

primarily because Mr. Tavera pledged his interest in CTM to satisfy certain debts of the GYM

DEBTORS. Tavera Decl., Paragraph 8.2.

7.3    The other two senior living parks (RIO and SIERRA VIEW) as set forth above are in

Phelan, California and Belen, New Mexico. They are separate corporations and these two entities

have not yet filed petitions under Chapter 11 of the Bankruptcy Code. They are, however,

completely owned and directly operated by Mr. Tavera. These entities have, through their operating

profits directly supported the GYM DEBTORS in the previous year and, at the same time, they have

guaranteed hundreds of thousands of the debts of the GYM DEBTORS. Tavera Decl., Paragraph 8.3.

7.4    RIO and SIERRA VIEW are in the process of preparing their Chapter 11 Petitions. It

is believed that they have to file because of the nature and extent of their unsecured guarantees for

the GYM DEBTORS. For example, there are documents found that indicate that (subject to a further

review that is still ongoing) RIO guaranteed seven GYM DEBTORS leases, with a present total

balance of approximately $1.3 million; SIERRA VIEW guaranteed (subject to the same review) at

1   least $300,000 worth of GYM DEBTOR leases, and CTM guaranteed (subject to the same review) at

2   least $299,000 worth of GYM DEBTOR leases. Those Chapter 11 petitions will be filed in the

3   Central District of California. Tavera Decl., Paragraph 8.4.

4

5        7.5     The operating profits per month of RIO, SIERRA VIEW, and the 75% of CTM owned

6   by the estate are approximately $40,000 per month. Mr. Tavera cannot let these entities be subject to

7   the whims of creditors that may seek to enforce the guarantee obligations on an ad hoc basis. Tavera

8   Decl., Paragraph 8.5.

9

10

11
## II.
## COMMON MANAGEMENT AND CONTROL

12       8.      The three gym operations are spread out over approximately 25 miles of Los Angeles

13  County and, while each of the gyms operate separately with respect to their membership services,

14  they are managed together by the same management team. The team operates out of the San

15  Fernando Valley, and the books and records of the companies are, or will shortly be, housed in that

16

17  separate office. The Debtors opened up the facilities one by one (Redondo Beach being the first, and

18  Commerce being the last) and sought credit and open accounts from the same group of creditors.

19  The three companies kept separate checking accounts and paid their bills generally (but not always)

20  from the account of the company that owed the bills.  However, it was a general practice (at least

21  during the last twelve months) to transfer funds from one company to another through the means of

22

23  "advances" if one of the accounts had insufficient funds with which to pay its own bills. Tavera

24  Decl., Paragraph 9.

25       9.      The GYM DEBTORS are managed by a common group of managers. The chief of

26  operations of each of the GYM DEBTORS is Steve Tavera, the son of TAVERA, who runs all three

27  of the GYM DEBTORS. The GYM DEBTORS have had a long-standing chief bookkeeper – Mr.

28

Severino "Benny" Leongson. Mr. Leongson serves as the internal accountant for all three GYM

DEBTORS and has done so for many years.    Tavera Decl., Paragraph 10.

       10.    Bryan Avaylon works as the business and financial consultant for all of the GYM

DEBTORS. Based upon the common management and bookkeeping of the GYM DEBTORS, many

of the creditors treat the GYM DEBTORS as one entity. It is not an unusual situation for a creditor

to be a creditor of more than one of the GYM DEBTORS and for conversations between Steve

Tavera, Bryan Avaylon, or Benny Leongson, on the one hand, and a creditor on the other, to range

over the operations over all three debtors. TAVERA DECL., Paragraph 11.

       11.    The success of the GYM DEBTORS cases as a whole depend to a great extent on the

success of each individual case. Both Redondo Beach and Hawthorne are established clubs that have

economies of scale relating to the reduced costs of joint management and control, common buying

power, and reduced advertising expenses. The Commerce facility is less established and needs the

operational help and management that the existing experienced joint management team can provide.

TAVERA DECL., Paragraph 12.

### III.

### COMMON CREDITORS; CROSS-GUARANTEES

       12.    To a great extent, Debtors share the same secured and unsecured creditors. Of the 20

Largest Unsecured Creditors, the Gym Debtors have listed (albeit, disputed) Allstate Financial

Group, Inc. ("AFG"). In the prefiling period of time AFG served as the billing agent for the three

companies. This means that AFG would collect the Electronic Funds Transfer drafts from the

customers (the "DRAFT") and send the collected funds to the three companies.

       13.    In addition, AFG claims that it has advanced some $580,000 to the Gym Debtors.

What one gym received; the others guaranteed.    TAVERA is also a guarantor of this obligation.

1  Tavera Decl., Paragraph 13.

2      13.1  Additionally, of the 20 Largest Unsecured Creditors, five of them[1] are listed by the

3  three GYM DEBTORS.  Attached as Exhibits "1", "2" and "3" is the listing of the 20 Largest

4

5  Unsecured for each of the three GYM DEBTORS as filed with the Court in the opening schedules.

6  Further, TAVERA is an alleged guarantor of all of these creditors.  Tavera Decl., Paragraph 14.

7      14.  Of the 20 Largest Unsecured Creditors, two of the GYM DEBTORS list an additional

8  6 common creditors.[2]  TAVERA is an alleged guarantor of all of these creditors.  Tavera Decl.,

9  Paragraph 15.

10      15.  With regard to the leases and/or secured interests that are listed on the Schedules of

11  the Gym Debtors, TAVERA has allegedly executed 29 alleged guarantees on behalf of the co-

12

13  debtors.  MIC has executed four alleged guarantees on behalf of MIH and MIR; MIH has executed

14  at least five alleged guarantees on behalf of MIC and three alleged guarantees on behalf of MIR; and

15  MIR has executed at least fived alleged guarantees on behalf of MIC and five guarantees on behalf of

16

17  MIH.  A copy of a preliminary chart setting forth the various creditors and purported guarantees and

18  the amounts that are purportedly due under the guarantees is attached to the Tavera Decl. as Exhibit

19  4.[3]  Tavera Decl., Paragraph 16.

20      16.  On the purported guarantees of the GYM DEBTORS, the total amount being

21  demanded personally against TAVERA is in excess of $2.5 million.  TAVERA DECL., Paragraph

22

23  _____

24  [1]  Southern California Edison, US Express Leasing, Bay Cap, LLC, National City Heathcare Finance and Farmers &

25  Merchants Bank.

26  [2]  Key Equipment, All Points Capital, Balboa Capital, Puget Sound Leasing, De Lage Landen and Butler Capital.

27  [3] The listing of an entity on Exhibit 4 is not an admission that any purported guaranty is valid or that particular entity is entitled to any sums under the purported guarantees.  Debtors reserve the right to contest any purported guarantees or

28  alleged sums under the purported guarantees in the future.

17.

17.    MI has purportedly guaranteed approximately $1.8 million on behalf of the co-GYM DEBTORS.  MI- Hawthorne has purportedly guaranteed approximately $1.6 million on behalf of the co-GYM DEBTORS.  MI-Commerce has purportedly guaranteed approximately $800k on behalf of the co-GYM DEBTORS.    TAVERA DECL., Paragraph 18.

17.1    MTC provides personal training services to the customers of two of the GYM DEBTORS (MIH and MIC).  TAVERA DECL., Paragraph 18.1

17.2    MIHC manages all four of the other GYM DEBTORS (MIH, MIC, MIR and MTC). TAVERA DECL., Paragraph 18.2

17.3    The City of Hawthorne, which has advanced $2.5 million to MIC, contends that it is guaranteed by Tavera, MIR and MIC.  I have not seen those documents for some time and I do not necessarily agree with the contentions.  Tavera Decl., Paragraph 18.3

17.4    The MOBILE HOME PARKS have each either guaranteed or securitized debts relating to the GYM DEBTORS.  It may well be that the parks (located out of the county and in two different states) may well have to file Chapter 11 if the creditors that hold the guarantees or security decide to proceed against those otherwise solvent operations.  However, that decision has not yet been made.

## IV.

## COMMON PROFESSIONALS

18.    The Debtors are seeking to employ the same professionals for all six cases.  Such employment for the Debtors' accountants and attorneys would be in the best interests of creditors in that the administrative costs would be vastly reduced and the estates would not have to build a learning curve in six different counsel.

19.    The Debtors are seeking to employ the same professionals for all six cases.  Such

employment for the Debtors' accountants and attorneys would be in the best interests of creditors in

that the administrative costs would be vastly reduced and the estates would not have to build a

learning curve in five different counsel.  There are common creditors in each of the five GYM

DEBTORS' cases, and there are alleged guarantee liabilities relating to the same creditors of

TAVERA's case.  Realistically, any Plan of Reorganization that is contemplated here would have to

be a "Joint Plan" and involve all six cases (if not the MOBILE HOME PARKS as well).  For that

reason again, there should be but one set of attorneys to represent the Debtors and propose the Plan.[4]

## V.

## MEMORANDUM OF POINTS AND AUTHORITIES

20.    By this Motion, the Debtors respectfully request that the Court enter an Order,

substantially in the form attached hereto as Exhibit A, providing for the joint administration of their

Chapter 11 cases and estates pursuant to Bankruptcy Rule 1015(b).

21.    Under Bankruptcy Rule 1015(b), the Court may order the joint administration of the

estate of "a debtor and an affiliate".  Fed R. Bankr. P. 1015(b).  Moreover, an order of joint

administration pursuant to Bankruptcy Rule 1015(b) is a procedural device that "can lead to

substantial efficiencies and savings of estate funds."  9 *Collier on Bankruptcy* (15[th] Ed. Rev. 2006)

¶1015.03; *see also* Fed. R. Bankr. P. 1015 advisory committee's note ("Joint administration may

include combining the estates by using a single docket for the matters occurring in the administration,

including the listing of filed claims, the combining of notices to creditors of the different estates, and

the joint handling of other purely administrative matters that may aid in expediting the cases

---

[4] There are also three other Chapter 11 proceedings that may have to be filed.  Although the issue is not yet before the
Court if and when the KHMC, SIERRA VIEW and RIO cases are filed, all of the Debtors will seek joint administration
of those cases as well on the same terms as herein sought.

rendering the process less costly,") As a consequence, joint administration is typical an appropriate

in cases such as these, where several affiliated corporations together have filed chapter 11 petitions:

Joint administration is common when a consolidated group of corporations files for bankruptcy relief.

Particularly in Chapter 11, the success of one affiliate's reorganization effort may depend on the

success of the other affiliate's efforts.

*9 Collier, supra,* ¶1015.03.

22.     Here, the Debtors are affiliates as that term is defined in Sections 101(2)(B) of the

Bankruptcy Code and used in Bankruptcy Rule 1015(b). In addition, the burdens on the Court, the

Clerk of the Court, the Debtors, and parties in interest would be increased materially if these cases

were not jointly administered and separate dockets were maintained for each Debtor. Given the

connected nature of the Debtors' various operations and indebtedness, in the absence of joint

administration virtually every paper filed in the case of one Debtor likely would have to be

duplicated and filed in the case of the other Debtors. Joint administration will limit such duplication

and, as a consequence, will promise the interests and convenience of all parties and will reduce the

costs and expedite the administration of these cases.

23.     Finally, the order of joint administration requested by the Debtors is not intended to

and will not impair any substantive rights of the creditors or interest-holders of the Debtors because

the relief requested is purely procedural in nature and in no way is intended to affect substantive

rights. See, e.g., Reider v. Federal Deposit Insurance Corp. (In re Reider), 31 F.3d 1102, 1109 (11th

Cir. 1994) ("Joint administration is thus a procedural tool permitting use of a single docket for

administrative matters, including the listing of filed claims, the combining of notices to creditors of

the different estates, and the joint handling of other ministerial matters that may aid in expediting the

1  cases. Used as a matter of convenience and cost saving, it does not create substantive rights.")

2  (citation omitted). Woburn Assoc. v. Kahn (In re Hemingway Transport, Inc.), 954 F2d 1, 11 (1st

3  Cir. 1992) ("joint administration is designed in large part to promote procedural convenience and

4
5  cost efficiencies which do not effect the substantive rights of claimants or the respective debtor

6  estates.").

7                                        **VI**
8                           **VENUE CONSIDERATIONS**

9       The six cases that have thus far been filed basically involve five different operating
10
11  businesses; MIH – which involves the operation of a Golds Gym facility in Hawthorne, California,

12  MIC – which involves an operation in the City of Commerce, California, MIR – which involves the

13  operation of a Golds Gym facility in Redondo Beach, California, MTC – which involves the business
14
15  of managing personal training sessions in Hawthorne, California, CTM – which involves the

16  operations of a mobile home park in Yucaipa, California, and GG Fitness Express, Ltd. – which

17  involves the operations of a Golds Gym in Auburn, Washington. In addition, there will shortly be

18  filed at least two other Chapter 11 petitions (as described above) one for RIO – which operates a

19  mobile home park in Belen, New Mexico, and one for SIERRA VIEW – which operates a mobile
20
21  home park in Phelan, California.

22       From the Debtor's point of view the most important operations are at the three MOBILE

23  HOME PARKS, because it is more certain at this time that they will provide the profits that will

24  "grease the wheels" of the Chapter 11 plans. It is possible, maybe even likely, that the GYM

25  DEBTORS will provide the financial muscle; however, the Joint Debtors will be careful in
26
27  monitoring their performance to see whether or not that will happen.

28       In addition, the Debtors' emphasis on restructuring will be through Muscle Improvement

Holdings Corporation.  At the present time this entity manages the other entities through offices in the San Fernando Valley.  However, the company was set up to be the vehicle for a merger of the four club interests (to the extent that each club proves to be viable only) under state law; in addition, it was designed to be the "lead entity" in the event that this Court approves "substantive consolidation" of some or all of these estates at a later time.

Going to direct venue considerations, the Joint Debtors believe that they would be as follows:

1.    From the debtors' management point of view, they would prefer the Woodland Hills courthouse because of its easier availability, and closer access, to the debtors themselves.  From the point of view of the Debtor's consultants, accountants and attorneys, the Woodland Hills Courthouse is easier for them to get to, and the joint estates would incur less fees than those that would be incurred at the downtown courthouse.  The gym debtors' independent consultant, Bryan Avaylon, works primarily in the San Fernando Valley and northwards therefrom.

2.    From a costs point of view there is likely to be a significant time and costs savings in keeping the case in the Woodland Hills courthouse in that there is expected to be a significant amount of litigation in these cases.  There are approximately 72 different leases, plus or minus, that have already been identified as "finance leases" (as opposed to true leases) and every one of them is "under water", according to the Debtors' appraisals of the property.

3.    There are two major creditors that are not personal property lessors that are expected to litigate their claims, and the extent and enforceability of their guarantees, i.e., the City of Commerce landlord as to approximately a $500,000 claim for prefiling rent (that has guarantees that extend to both the mobile home parks and the other gym debtors), and the City of Hawthorne as to a $2.5 million business loan.

4.    From the affected creditors point of view there is little difference between travelling to

the downtown courthouse or the Woodland Hills courthouse. The joint debtors believe, therefore,

that this is a neutral consideration.

      5.     From the court's point of view, this is a case that, if jointly administered (and the Joint

Debtors request that this be so ordered), has business interests in the San Fernando Valley Division,

the Los Angeles Division and the Riverside Division of the Central District. In addition there are

other business interests outside the Central District (in Auburn, Washington, Yucaipa, California,

Belen, New Mexico and Phelan, California). Thus, there is no significant reason to transfer the two

cases to the Los Angeles Division; instead, the four cases should be transferred to the San Fernando

Valley Division so that the cases can proceed promptly and at a significantly lessened cost.

**VII.**
**NOTICE**

      24.    The Debtors submit that pursuant to Local Bankruptcy Rule 2081-1(b), the Court may

enter an order granting this Motion *ex parte*, without further notice and or a hearing. Nevertheless,

concurrently with the filing of this Motion, the Debtors have served copies of the Motion and certain

related pleadings and documents, by electronic mail (where available) or overnight delivery (where

no electronic mail information is available), on (a) the Office of the United States Trustee for the

Central District of California; (b) the Internal Revenue Service; (c) the Franchise Tax Board for the

State of California; (d) the Employment Development Department for the State of California; (e)

counsel to the Debtors' prepetition secured lenders; and (f) the creditors identified on the list of

creditors holding the thirty (30) largest unsecured claims against the Debtors on a consolidated basis;

further, for those parties for whom the Debtors have facsimile numbers but not electronic mail

information, the Debtors served notice of the Motion, in the form of the Notice, by facsimile

transmission. The Debtors submit that such notice is reasonable and sufficient under the

circumstances and that no other or further notice need be given.

## VIII.
## <u>THIS MOTION SHOULD BE GRANTED ON AN EMERGENCY BASIS</u>

25.    As set forth in the TAVERA DECL. the relief requested herein is critical because its approval will avoid the administrative burden on this Court and the Debtors, and alleviate any potential for confusion, which may arise from the separate administration of these cases. (TAVERA DECL., paragraph 22).

26.    The Court may issue this Order on either an emergency basis or on shortened time. Local Bankruptcy Rule 2081-1(a)(6); Rule 9075-1.  Because of the exigencies described herein, i.e., that by waiting until a noticed hearing date, several additional motions will have to be drafted and filed and it will burden the Court resources by dealing with all of the motions when they can jointly administered.  Therefore, the Debtors request a hearing on an emergency basis.

## IX.
## <u>CONCLUSION</u>

**WHEREFORE,** the Debtors respectfully request that the Court order an order, in substantially the form of the proposed Order attached hereto as Exhibit A, directing the joint administration of their Chapter 11 cases and estates pursuant to Bankruptcy Rule 1015(b).

Dated:  January 26, 2010                            LAW OFFICES OF ROBERT M. YASPAN


                                                    By_____
                                                    Robert M. Yaspan, Proposed Attorneys
                                                    for Debtors

1 | ROBERT M. YASPAN, SBN 051867
DEBRA R. BRAND, SBN 162285
2 | LAW OFFICES OF ROBERT M. YASPAN
3 | 21700 Oxnard Street, Suite 1750
Woodland Hills, California 91367
4 | Telephone:  (818) 774-9929
Facsimile: (818) 774-9989
5 | [Proposed] General Counsel for Debtors

6

### UNITED STATES BANKRUPTCY COURT
7 | ### CENTRAL DISTRICT OF CALIFORNIA
### SAN FERNANDO VALLEY DIVISION
8

9

| | | |
|---|---|---|
| In re | ) | Chapter  No.:   11 |
| | ) | |
| Muscle Improvement Holding Corporation, | ) | Case No.: 10-10868 |
| a California Corporation | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |
| In re | ) | Chapter  No.:   11 |
| | ) | |
| Muscle Improvement Inc., | ) | Case No.: 10-12736 |
| a California Corporation | ) | |
| | ) | |
| Debtor. | ) | Date:  January 28, 2010 |
| | ) | Time: 10:00 A.M. |
| | ) | Place:  Courtroom 303 |
| | ) |        21041 Burbank Blvd. |
| | ) |        Woodland Hills, CA 91367 |
| | ) | |
| | ) | |
| | ) | Chapter No.:    11 |
| | ) | |
| Muscle Improvement – Hawthorne Inc. | ) | Case No.: 10-12743 |
| a California Corporation | ) | |
| | ) | |
| Debtor | ) | This document relates to: |
| | ) | |
| | ) | XX  All cases |
| | ) | ____  Muscle Improvement Holding Corporation |
| | ) | ____  Muscle Improvement, Inc. |
| | ) | ____  Muscle Improvement – Hawthorne, Inc. |
| | ) | ____  Muscle Improvement – Commerce, Inc. |
| | ) | ____  Muscle Training Corporation |
| | ) | ____  Abram and Ruth Tavera |

1

*EXHIBIT "A"*

| | | |
|---|---|---|
| 1 | In re | ) Chapter No.: 11 |
| 2 | | ) |
| | Muscle Improvement – Commerce Inc. | ) Case No.: 10-12756 |
| 3 | a California Corporation | ) |
| 4 | | ) |
| | | ) |
| 5 | Debtor | ) |
| 6 | | ) |
| 7 | | ) |
| 8 | In re | ) Chapter No.: 11 |
| 9 | | ) |
| | Muscle Training Corporation, | ) Case No.: 10-10873 |
| 10 | a California Corporation, | ) |
| 11 | | ) |
| | Debtor. | ) |
| 12 | | ) |
| 13 | In re | ) Chapter No.: 11 |
| 14 | | ) |
| | Abram and Ruth Tavera | ) Case No.: 10-12765 |
| 15 | | ) |
| 16 | Debtors. | ) |
| 17 | | ) |
| 18 | | ) |

**[PROPOSED] ORDER DIRECTING JOINT ADMINISTRATION OF DEBTORS' CASES
AND ESTATES PURSUANT TO BANKRUPTCY RULE 1015(b) AND
TRANSFERRING CERTAIN CASES**

This matter coming before the Court an "Emergency Motion for Order Directing Joint

Administration of Debtors' Cases and Estates Pursuant to Bankruptcy Rule 1015(b) ("Motion") filed

by Abram Tavera and Ruth Tavera ("Tavera"), Muscle Improvement, Inc., a California corporation,

and Muscle Improvement – Commerce, Inc., a California corporation ("MI Commerce") (collectively

the "Debtors"), the debtors and debtors in possession herein (collectively, the "Debtors"); the Court

having reviewed the Motion, the record in these cases and the Tavera Declaration (as that term is

2

defined in the Motion), the Court hereby finds that (a) joint administration of the Debtors' cases and estates pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), as requested by the Debtors in the Motion, is in the best interests of the Debtors and the Debtors' estates and, among other things, will promote the interests and convenience of all parties and reduce the costs and expedite the administration of the Debtors' chapter 11 cases; (b) good cause appears for the relief requested in the Motion,; and (c) notice of the Motion was reasonable and appropriate under the circumstances.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The MOTION is GRANTED.

2.      The four cases that were originally designated to be cases in the "Los Angeles Division" shall instead be heard in the San Fernando Valley Division before this Court.  They shall retain the same case number and filing date.

3.      The above-captioned chapter 11 cases and bankruptcy estates hereafter shall be jointly administered pursuant to Bankruptcy Rule 1015(b), and otherwise. The individual case entitled as "Muscle Improvement Holding Corporation", Case No. _____, shall be the lead case (the "MIHC CASE").

3.      The Clerk of the Court shall maintain a single docket for the Debtors' jointly-administered chapter 11 cases under the MIHC CASE.  All pleadings shall be filed in the MIHC CASE; and it shall not be necessary to file any further, or duplicate, pleadings in the other cases captioned on Exhibit "1".

4.      The caption for any pleading filed with the Court with respect to any of the above-captioned cases shall conform substantially to the form of the caption attached hereto as Exhibit 1.

5.      Nothing in this Order shall be deemed to be a substantive consolidation of the

3

1    Debtors' cases and estates, and all parties of interest reserve their rights to request or oppose such

2    substantive consolidation.

3    Dated:  January ____, 2010

4

5

6                                                    _____

7                                                    UNITED STATES BANKRUPTCY JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

1
2
3
4
5
6

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | | |
|---|---|---|
| In re | ) | Chapter  No.:    11 |
| | ) | |
| Muscle Improvement Holding Corporation, | ) | Case No.: 10-10868 |
| a California Corporation | ) | |
| Debtor | ) | |
| | ) | |
| In re | ) | Chapter  No.:    11 |
| | ) | |
| Muscle Improvement Inc., | ) | Case No.: 10-12736 |
| a California Corporation | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | Chapter No.:    11 |
| | ) | |
| Muscle Improvement – Hawthorne Inc. | ) | Case No.: 10-12743 |
| a California Corporation | ) | |
| | ) | |
| Debtor | ) | This document relates to: |
| | ) | |
| | ) | XX   All cases |
| | ) | ____  Muscle Improvement Holding Corporation |
| | ) | ____  Muscle Improvement, Inc. |
| | ) | ____  Muscle Improvement – Hawthorne, Inc. |
| | ) | ____  Muscle Improvement – Commerce, Inc. |
| | ) | ____  Muscle Training Corporation |
| | ) | ____  Abram and Ruth Tavera |
| In re | ) | Chapter  No.:    11 |
| | ) | |
| Muscle Improvement – Commerce Inc. | ) | Case No.: 10-12756 |
| a California Corporation | ) | |
| | ) | |

5

*Exhibit "1"*

1

                              Debtor                )
2                                                   )
                                                    )
3   _____        )
    In re                                           )    Chapter   No.:    11
4                                                   )
    Muscle Training Corporation,                    )    Case No.: 10-10873
5   a California Corporation,                       )
                                                    )
6                              Debtor.              )
                                                    )
7                                                   )
    _____        )
8   In re                                           )    Chapter   No.:    11
                                                    )
9   Abram and Ruth Tavera                           )    Case No.: 10-12765
10                                                  )
                                                    )
11                             Debtors.             )
                                                    )
12                                                  )
                                                    )
13  _____        )

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6